UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MACK BLACKIE, | : | |
| | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | C.A. NO.: |
| | : | |
| TIMOTHY HAMMOND, alias, individually | : | |
| and in his official capacity as a police officer in | : | **Jury Trial Demanded** |
| THE CITY OF WOONSOCKET Police Department; | : | |
| and THE CITY OF WOONSOCKET, by and | : | |
| through its Treasurer, Sue-Ellen Beals, alias; | : | |
| | : | |
| *Defendants* | : | |

**COMPLAINT**

### I.    Introductory Statement

1.    As explained herein, Mack Blackie ("Plaintiff") was unlawfully arrested and detained *twice* by Defendants, and as a result, he was criminally charged, incarcerated for approximately thirty-one (31) days, and prosecuted for crimes that he did not commit, including a felony.

2.    This action is brought by Plaintiff seeking declaratory relief and compensatory and punitive damages for acts and/or omissions of Defendants committed in violation of Plaintiff's right to be free from unreasonable search and seizure, false arrest and false imprisonment, and malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, as well as under Rhode Island common law.

### II.    Parties

3.    Plaintiff is a resident of the City of Woonsocket, County of Providence, and State of Rhode Island.

4.      Defendant Timothy Hammond, alias ("Defendant Hammond"), is sued individually and in his official capacity as a police officer in the Defendant City Police Department.

5.      Defendant City of Woonsocket ("Defendant City" or "Defendant City Police Department") is a municipal corporation duly authorized and organized under the laws of the State of Rhode Island and is sued by and through its Treasurer, Sue-Ellen Beals, alias, the official designated by state law, R.I. Gen. Laws § 45-15-5, to be named in a suit for relief against Defendant City.

### III.    Jurisdiction

6.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201 and 2202.

### IV.    Venue

7.      Venue is proper in this Court insofar as, on information and belief, all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391. Venue is also proper because all of the acts and/or omissions giving rise to the claims herein occurred in the District of Rhode Island.

### V.    Material Facts

8.      On or about August 22, 2022, a breaking and entering ("B&E") occurred in an apartment within Defendant City located at 75 Arnold Street, Apartment #L1 (the "Apartment").

9.      William Grover ("Mr. Grover") and his wife Veronica Higbie ("Mrs. Higbie") resided in the Apartment at the time of the B&E, and they were both inside of the Apartment at the time of the B&E.

10.      Mr. Grover and Mrs. Higbie's roommate, who they referred to as "Rico," was also inside the Apartment at the time of the B&E.

11. On or about August 22, 2022, a police officer from Defendant City Police Department named Matthew Labine investigated the B&E by meeting with Mr. Grover and Rico.

12. During this meeting, both Mr. Grover and Rico told Officer Labine that an individual that goes by the name of "Black" committed the B&E.

13. Prior to the B&E taking place, Mr. Grover had met Black on a few occasions.

14. Mr. Grover informed Officer Labine that if he saw "Black" then he would be able to identify him.

15. Neither Mr. Grover nor Rico stated to Officer Labine that Plaintiff committed the B&E.

16. On or about August 22, 2022, Mr. Grover wrote and signed a Witness Statement describing the events of the B&E in which he identified Black as the individual who committed the B&E.

17. On or about August 30, 2022, Defendant Hammond investigated the B&E by meeting with Mr. Grover at the Apartment.

18. At the time of his investigation, Defendant Hammond served as a Detective within Defendant City Police Department and held approximately fifteen (15) years of experience as a police officer.

19. During Defendant Hammond's meeting with Mr. Grover on or about August 30, 2022, Defendant Hammond asked Mr. Grover at least twice if Plaintiff committed the B&E, to which Mr. Grover responded each time he asked by saying Plaintiff did not commit the B&E.

20. At one point during their meeting, Defendant Hammond stated, "it sounds like Mack Blackie" committed the B&E or words to that effect, and Mr. Grover responded by stating Plaintiff did not commit the B&E.

3

21. At the time of the meeting between Mr. Grover and Defendant Hammond, Mr. Grover knew Plaintiff fairly well.

22. Mr. Grover had known Plaintiff for about one (1) year.

23. During their meeting, Mr. Grover explained the different physical characteristics between Black and Plaintiff.

24. Specifically, Mr. Grover stated that Plaintiff is shorter than Black, huskier than Black, and has better teeth than Black.

25. Mr. Grover never told Defendant Hammond that Plaintiff committed the B&E, either during their meeting or otherwise.

26. Mr. Grover has never told any person that Plaintiff committed the B&E.

27. During their meeting, Defendant Hammond stated to Mr. Grover that he would schedule a photo line-up during which Mr. Grover would be asked to identify the individual who committed the B&E.

28. Mr. Grover told Defendant Hammond that if he was shown photos during a photo line-up, then he would be able to identify Black in a photo.

29. On or about August 30, 2022, Defendant Hammond wrote a Witness Statement detailing his investigation into the B&E and his meeting with Mr. Grover.

30. In his Witness Statement, Defendant Hammond wrote that an appointment would be scheduled for Mr. Grover to view a photo line-up providing him with the opportunity to identify the individual who committed the B&E.

31. However, Defendant Hammond failed and/or refused to schedule the photo line-up prior to the ensuing arrests of Plaintiff discussed below.

32. Defendant Hammond also wrote in his Witness Statement that "[Mr.] Grover positively identified the suspect male as being Mack Blackie."

33. This is a false statement as Mr. Grover never identified to Defendant Hammond or to anyone else that Plaintiff committed the B&E and indeed he told Defendant Hammond that it was **not** Plaintiff.

34. Defendant Hammond concluded his Witness Statement by stating that "[t]here is probable cause for an arrest warrant" for the arrest of Plaintiff.

35. That same day, on or about August 30, 2022, without having scheduled the photo line-up that he told Mr. Grover he would schedule and that he wrote in his Witness Statement he would schedule, Defendant Hammond wrote and signed under oath an Affidavit in support of a request for an Arrest Warrant to be issued for Plaintiff's arrest over the B&E.

36. Defendant Hammond knowingly and intentionally made several false statements in his Affidavit and/or made them with reckless disregard for the truth.

37. Defendant Hammond stated in his Affidavit that Mr. Grover told Officer Labine that Plaintiff committed the B&E.

38. This statement is false because Mr. Grover never told Officer Labine that Plaintiff committed the B&E.

39. Defendant Hammond also wrote in his Affidavit that he spoke with Mrs. Higbie and that she identified Plaintiff as the person who committed the B&E.

40. This statement is false for two reasons. First, Mrs. Higbie never told Defendant Hammond that Plaintiff committed the B&E. Second, Defendant Hammond never met with Mrs. Higbie as part of his investigation into the B&E prior to submitting his Affidavit or prior to his Affidavit being resubmitted as discussed below.

41.    When Defendant Hammond wrote his Affidavit, Defendant Hammond knew that these statements he made in his Affidavit were false, but he nonetheless intentionally and knowingly made these false statements and/or made them with reckless disregard for the truth.

42.    The Arrest Warrant was signed by a Judge or authorized officer of the Sixth Division District Court for the State of Rhode Island ("District Court") on or about August 30, 2022.

43.    As a result of Defendant Hammond's Affidavit, Plaintiff was arrested and detained by Defendant City police on or about August 30, 2022.

44.    Defendant City police took Plaintiff to Defendant City's police station, photographed him, and held him overnight.

45.    Defendant City police transported Plaintiff to the District Court the next morning for his arraignment.

46.    While at the courthouse, Plaintiff collapsed on the courtroom floor, and he was transported to Landmark Medical Center located in Defendant City.

47.    Defendant City police temporarily withdrew the Arrest Warrant when Plaintiff was admitted to Landmark Medical Center's intensive care unit.

48.    After approximately nine (9) days of hospitalization at Landmark Medical Center, Plaintiff was discharged.

49.    Defendant City police resubmitted Defendant Hammond's Affidavit to the District Court and arrested Plaintiff once again on or about October 23, 2022.

50.    Despite the additional time to do so between Plaintiff's arrest on or about August 30, 2022, and his rearrest on or about October 23, 2022, Defendant Hammond did not conduct a photo line-up or otherwise seek to correct the false statements made in his Affidavit.

51.     On or about October 24, 2022, the State of Rhode Island pressed criminal charges against Plaintiff for the B&E.  Specifically, Plaintiff was charged with Unlawful Breaking and Entering of a Dwelling House, a felony codified under R.I. Gen. Laws § 11-8-2, and for committing an assault and/or battery against Mrs. Higbie, a misdemeanor codified under R.I. Gen. Laws § 11-5-3.

52.     At the time when the criminal charges were filed, Plaintiff was serving a one-year term of probation.

53.     Thus, upon the filing of these criminal charges against Plaintiff, Plaintiff was incarcerated as a probation violator for a period of approximately seventeen (17) days without the possibility of being released on bail.

54.     Thereafter, on or about November 10, 2022, the District Court set bail at $1,000.00 surety, which required that 10% or $100 be paid in order for Plaintiff to be released on bail.

55.     Plaintiff could not afford to make bail.

56.     In fact, Plaintiff was unhoused (homeless) at the time of both of his arrests.

57.     Consequently, Plaintiff continued to remain incarcerated for the next approximate thirteen (13) days.

58.     An individual working for The Milagros Project—a non-profit organization in Defendant City where Plaintiff would volunteer—raised the money for Plaintiff's bail, allowing Plaintiff to be released on or about November 23, 2022.

59.     On or about February 27, 2023, a Pre-Trial Conference in the criminal prosecution of the criminal charges against Plaintiff was held, which Mr. Grover and Mrs. Higbie attended.

60. While in the courthouse hallway, Mr. Grover and Mrs. Higbie observed that Plaintiff was the individual being prosecuted for the B&E and quickly realized that the wrong individual was being prosecuted.

61. Thus, Mr. Grover and Mrs. Higbie informed the prosecutor that Plaintiff had not committed the B&E.

62. Because of these exonerating statements, the criminal charges against Plaintiff were dropped and the criminal case against him was dismissed on or about February 27, 2023.

63. On or about August 7, 2024, and pursuant to R.I. Gen. Laws § 45-15-1, Plaintiff's undersigned counsel wrote and sent to Defendant's City Council a claim and/or demand against Defendant City based on the foregoing acts and/or omissions of Defendants.

64. Neither just nor due satisfaction has been made to Plaintiff by Defendant City nor by Defendant City's Treasurer.

## VI.    Intentional or Reckless Conduct

65. At all relevant times, Defendant Hammond acted intentionally, willfully, maliciously, and/or with deliberate, reckless, or callous indifference to Plaintiff's clearly established constitutional rights.

66. Furthermore, at all relevant times, Defendant Hammond knew or should have known that his conduct would cause or contribute to the deprivation of Plaintiff's clearly established constitutional rights.

67. At all relevant times, Defendant Hammond was motivated by malice, wantonness and/or willfulness of an extreme nature.

8

## VII.    Harm and Damages

68.    As a direct and proximate result of the Defendants' acts and/or omissions, including but not limited to those described herein, Plaintiff has suffered and will continue to suffer personal injury, pain and suffering, emotional distress, pecuniary harm, loss of liberty, injury to his reputation, deprivation of his constitutional and common law rights, and has been forced to incur expenses for legal services.

## VIII.    Claims for Relief

69.    Plaintiff incorporates in the counts below the allegations contained in ¶¶ 1 through 68 above.

### COUNT ONE
*Violation of the Fourth and Fourteenth Amendment Right to be Free From Unreasonable Search and Seizure Actionable Pursuant to 42 U.S.C. § 1983*

70.    Defendant Hammond, acting under the color of state law, by his individual acts and/or omissions, including, but not limited to, those described herein, violated Plaintiff's right to be free from unreasonable search and seizure, causing Plaintiff to suffer harm as aforesaid, and thereby deprived Plaintiff of rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

### COUNT TWO
*Common Law False Arrest and False Imprisonment*

71.    Defendant Hammond, by his individual acts and/or omissions, including, but not limited to, those described herein, unlawfully restrained Plaintiff, arresting him without probable cause and restraining his freedom of movement and restricting his liberty, all without legal reason or justification, while Plaintiff was at all times conscious of his confinement, in violation of the common law, causing Plaintiff to suffer harm as aforesaid.

## COUNT THREE
*Malicious Prosecution in Violation of the Fourth, Fifth, and Fourteenth Amendments, Actionable through 42 U.S.C. § 1983*

72.     Defendant Hammond, acting under the color of state law, by his individual acts and/or omissions, including, but not limited to, those described herein, caused criminal charges to be brought and prosecuted against Plaintiff without probable cause and with malice, which were terminated in favor of Plaintiff, causing Plaintiff to suffer harm as aforesaid, and thereby deprived Plaintiff of rights secured under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## COUNT FOUR
*Common Law Malicious Prosecution*

73.     Defendant Hammond, by his individual acts and/or omissions, including, but not limited to, those described herein, caused criminal charges to be brought and prosecuted against Plaintiff without probable cause and with malice, in violation of the common law of the State of Rhode Island, causing Plaintiff to suffer harm as aforesaid.

## COUNT FIVE
*Vicarious Liability Against Defendant City Under Rhode Island Common Law*

74.     Defendant Hammond was an employee, agent, and/or servant of Defendant City and was acting within the scope of his employment and agency at all times relevant hereto.

75.     Defendant City was at all relevant times vicariously responsible for the acts of its employees, agents and/or servants, including, but not limited to, the acts of Defendant Hammond.

76.     As a direct and proximate result of the actions by Defendant Hammond, Plaintiff suffered severe personal injury, pain and suffering, and incredible emotional distress.

## IX.    Prayers for Relief

**WHEREFORE,** Plaintiff prays that this Court grant the following relief:

1.      A declaratory judgment that Defendant Hammond, in the manner described herein, violated Plaintiff's right to be free from unreasonable search and seizure, false arrest and false imprisonment, and malicious prosecution under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as well as under Rhode Island common law, and that Defendant City is vicariously liable for Defendant Hammond's actions;

2.      An award of compensatory damages;

3.      An award of punitive damages against Defendant Hammond;

4.      An award of interest, costs and expenses of litigation, as well as reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

5.      Such other and further relief as this Court deems just and proper.

## X.      Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## XI.      Designation of Trial Counsel

Plaintiff hereby designates Joshua D. Xavier, Esq. as trial counsel.

Plaintiff,
By his attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

Date: October 17, 2024

**/s/ Joshua D. Xavier**
**Joshua D. Xavier, Esq. (#9456)**
**Chloe A. Davis, Esq. (#9334)**
**Cooperating Counsel,**
**American Civil Liberties Union Foundation of**
**Rhode Island**
2374 Post Road
Suite 201
Warwick, RI 02886
Phone: (401) 739-9690
FAX: (401) 739-9040
Email:  jdx@sinapilaw.com
        cad@sinapilaw.com

Of Counsel:

**/s/ Lynette Labinger**
**Lynette Labinger, Esq**. (#1645)
**Cooperating Counsel,**
**American Civil Liberties Union Foundation**
**of Rhode Island**
128 Dorrance Street
Box 710
Providence, RI 02903
Phone: (401) 465-9565
Email: ll@labingerlaw.com